UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEPHEN A. KORFONTA | ) | Case No. 08-16675-SSM |
| | ) | Chapter 7  (Involuntary) |
| Debtor | ) | |
| | ) | |
| W. CLARKSON MCDOW, JR, UNITED STATES TRUSTEE, REGION FOUR | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1228 |
| | ) | |
| STEPHEN A. KORFONTA | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

Before the court is the motion of W. Clarkson McDow, Jr., United States Trustee, Region Four ("U.S. Trustee") for summary judgment on two of the four counts in this action to deny the involuntary debtor, Stephen A. Korfonta, a discharge. A hearing was held on November 3, 2009, at which the plaintiff and the defendant (who, however, had not filed a response to the motion) were each represented by counsel. For the reasons stated, the motion will be granted with respect to one of the counts and denied with respect to the other.

Background

On October 28, 2008, three creditors filed an involuntary petition against Stephen A. Korfonta ("the debtor") for relief under chapter 7 of the Bankruptcy Code. The petition was not opposed, and an order for relief was entered on January 13, 2009. The debtor filed schedules

1

and a statement of financial affairs on February 11, 2009, listing real property in the aggregate amount of $2,128,520 (subject to liens totaling $2,397,000); $800,567 in priority tax claims; and $22,423,853 in general unsecured claims.  The bulk if not the entirety of the claims arise from the debtor's operation of a business called Seville Homes, LLC, itself an involuntary chapter 7 debtor in this court on a petition filed some two and a half months earlier.[1]  On August 11, 2009, the trustee, Robert O. Tyler, filed a report of no distribution in both the debtor's case and in the Seville Homes case.

This action to bar the debtor's discharge was commenced by the U.S. Trustee on August 10, 2009, and is pleaded in 4 counts.   Count I asserts that the debtor failed to keep or preserve financial information from which his financial condition might be ascertained.  Count II asserts that the debtor failed to keep or preserve recorded information from which the financial condition or business transactions of Seville Homes—with respect to which he is an insider—might be ascertained.  Count III alleges that the debtor made false statements under oath on his schedules and at a Rule 2004 examination.  And Count IV alleges in general terms that the debtor hindered, delayed, or defrauded "a creditor" (not otherwise identified) or the trustee.  The present motion seeks summary judgment on Counts I and II based on the debtor's testimony, during his Rule 2004 examination, that he had not filed individual income tax returns for 2005, 2006, 2007, and 2008; and that Seville Homes, of which he was the manager and sole member, and for which he had worked full-time since 2000, had never filed a tax return.  The debtor's explanation, during the examination, for failing to file the tax returns was:

---

[1] *In re Seville Homes, LLC*, No. 08-14643-SSM (Bankr. E.D. Va., pet. filed August 3, 2008).

> Well, for those years, starting in early 2006, everything went bad, so I didn't think – that was one of my last problems, least problem at that time, and with not making any money in 2007-2008, just haven't done them, and then this happened. So that's next.

Additionally, during the examination, the debtor was unable, for lack of any ready records, to give a precise figure for the amount of money Seville Homes paid to him in the years leading up to the bankruptcy petition or to explain how he was able to make a $20,000 a month mortgage payment on his house.

The debtor did not file a written response to the summary judgment motion. His attorney, however, appeared at the hearing on the motion and argued that the debtor—who he stressed had not sought bankruptcy protection ("He didn't ask to be here")—nevertheless did everything he could do to accurately disclose all information and transactions in the schedules and statement of financial affairs and at his Rule 2004 examination.

## Discussion

### I.

Under Rule 56, Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment may be entered against either a claiming or defending party without the necessity of a trial "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained, summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d

265 (1986). In ruling on motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Put another way, it is improper for the court, in evaluating conflicting evidence, to make credibility determinations or to draw adverse inferences against the non-moving party. *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007). At the same time, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When a motion for summary judgment is properly made and supported, an opposing party may not simply rely on allegations or denials in its own pleadings, but must, by affidavits or otherwise, set out specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e)(2).

II.

An individual debtor will be denied a discharge if, among other conduct, he or she "has concealed, destroyed, mutilated, falsified, or *failed to keep or preserve* any recorded information, including books, document, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." § 727(a)(3), Bankruptcy Code (emphasis added). Discharge will also be denied if the debtor is guilty of such conduct in connection with the case of an insider during or within one year before the filing of the petition in his own case. *Id.* § 727(a)(7).

A.

The purpose of § 727(a)(3) "is to give creditors sufficient information from which they can assess the debtor's estate and general financial posture." *Union Bank of the Middle East, Ltd. v. Farouki (In re Farouki)*, 133 B.R. 769. 780-81 (Bankr. E.D. Va. 1991). As the Fourth Circuit has explained, the essential requirement is that the available records "sufficiently identify the transactions so that intelligent inquiry can be made of them" and that "[a]ll is required is that a competent accountant should be able to determine from such books and records the financial condition of the bankrupt." *French*, 499 F.3d at 355 (internal quotations omitted). The Court also noted, however, that although "a bankruptcy debtor is not required to maintain perfect records," a debtor is "obliged by the statute to preserve sufficient and adequate financial records to enable the court and the parties to reasonably ascertain an accurate picture of his financial affairs." *Id*.

The U.S. Trustee's position, succinctly stated, is that the debtor's admitted failure to file personal income tax returns for the four years leading up to the filing of the petition, or, as managing member, to cause Seville Homes to ever file income tax returns, by definition constitutes a failure to keep or preserve recorded information from which his and Seville Homes' financial condition or business transactions might be ascertained. In support of this position, the U.S. Trustee cites *Lubman v. Hall (In re Hall)*, 174 B.R. 210 (Bankr. E.D. Va. 1994), in which the late Judge Shelley of this court—after trial, and not on summary judgment—denied the debtors a discharge based on their failure to have filed federal income tax returns for many years. The debtors in that case, though, were "tax protestors" who attempted to justify their failure to file returns by arguing that wages were not income. *Id.* at 215. Even so, Judge Shelley—relying

heavily on an opinion from the Southern District of New York, *Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830 (S.D. N.Y. 1993)—held that tax returns are among the most basic of financial records ("quintessential documents") that a person or company was expected to prepare and preserve, noting, "tax returns are utilized [by trustees] to verify the schedules filed by the debtors, to find property that may be improperly scheduled or not scheduled at all, to determine tax liability, and to determine whether refunds are forthcoming." *Hall*, 174 B.R. at 215.

B.

Quite frankly, the court is doubtful that a failure to file tax returns, without more, constitutes grounds for denial of discharge under § 727(a)(3). Congress specifically decreed that a failure to file a tax return renders the attendant tax liability non-dischargeable. § 523(a)(1)(B)(i), Bankruptcy Code. If Congress meant for such failure to bar a discharge of all other debts as well, it is curious that it did not say so. While tax returns, once prepared, are clearly records, the returns themselves do not constitute original sources of financial information. Rather, tax returns summarize and report financial information that presumably has been obtained from original sources. Accordingly, to the extent a debtor has kept and maintained financial records and information from which a return can be prepared, the court would not be prepared to hold that mere failure to actually prepare and file the return would constitute a failure to "keep or preserve . . . recorded information" so as to bar a chapter 7 discharge. The *Wolfson* decision is not to the contrary. There the tax returns—which the debtor only belatedly supplied and which the court found were surrounded by "an aroma of fraud"—were simply one of many documents that the debtor had failed to provide to the trustee. *Wolfson*, 152 B.R. at 833.

At the same time, given the legal requirement to prepare and file returns, the failure to do so reasonably supports an inference that the debtor has not kept or preserved the financial records that would enable a return to be prepared. In this connection, as Judge Shelley noted in *Hall*, "Once the trustee meets his initial burden of producing evidence that exhibits the basis for his objection . . . the burden shifts to the debtor to establish an excuse for inadequate or non-existent records." 174 B.R. at 214. This is as true in the context of summary judgment as at trial. Once the moving party has made out a prima facie case, the other party may not rest on mere denials in its pleadings or otherwise, but must produce evidence sufficient to demonstrate there is a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). The debtor here has not done so. Most notably, he has not filed an affidavit providing *any* explanation for the failure to file tax returns. At most, he cites—at oral argument, not in a written response—to the none-too-coherent explanation he provided at his Rule 2004 examination. His attorney, to be sure, further asserted at oral argument that the schedules and statements of financial affairs filed by the debtor provided adequate information for the purpose of § 727(a)(3). The court does not concur. The mere fact that schedules and a statement of financial affairs were filed in the debtor's own case and that of Seville Homes does not, in the court's view, give rise to an inference that they were prepared based on recorded information that would enable the trustee or creditors to verify their accuracy. Had the debtor submitted an affidavit explaining what records he had consulted in preparing the schedules and statement of financial affairs, or even why he had not complied with such a fundamental obligation as preparing and filing tax returns, a very different issue would be presented. But the debtor here has not responded to the summary judgment motion with affidavits, discovery responses, or other citations to the record sufficient to demonstrate that a

triable issue exists as to whether he or Seville Homes kept adequate financial records. In this respect, the present case is quite unlike *In re French*, in which the Fourth Circuit reversed a grant of summary judgment that had been predicated on a failure to keep or preserve financial records. The debtor in that case, in response to the summary judgment motion, had filed affidavits of both himself and his accountant explaining an earlier failure to produce records and opining that the records ultimately produced were sufficient to ascertain his financial condition. *French*, 499 F.3d at 356. The debtor here has not done so. Accordingly, the court concludes that the U.S. Trustee is entitled to summary judgment on Count I of the complaint.

C.

Count II raises an additional issue. Not only must the debtor be an "insider" with respect to Seville Homes—a relationship that the debtor does not deny—but there is a timing issue: namely, he must have "*committed* [an] *act*" of the type specified in § 727(a)(2), (3), (4), (5), or (6) of the Bankruptcy Code "in connection with" the Seville Homes case either during or within one year before the filing of the petition in his own case. § 727(a)(7), Bankruptcy Code. The problem is that the particular charge laid against the debtor is a sin, not of commission, but of omission. In particular, he is not charged with concealing, destroying, mutilating, or falsifying records—which are also violations of § 727(a)(3)—but rather with failing "to keep or preserve" records with respect to Seville Homes. If a record is destroyed, that is a discrete "act" that either is, or is not, "committed" on a particular date. If the destruction occurs during, or within one year before, the debtor's own case, that is a basis for denying the debtor's discharge. By contrast, if it occurs even one year and a day before the debtor's case is filed, § 727(a)(7) provides no basis for denying discharge. The question therefore arises: is a failure to *keep* or *preserve* records

an "act" that can be "committed"? And, if so, *when* is it committed? Put another way, if a debtor fails to keep or compile records in, say, 2005, with respect to the financial dealings of a business he controls and the bankruptcy petition is filed, as here, in 2008, in what sense can the debtor be said to have "committed" that "act" during or within one year of the filing of the petition in his own case, unless the court were to adopt some theory of a continuing default? A continuing default theory, however, would render the time limit in § 727(a)(7) nugatory. The evidence cited by the U.S. Trustee with respect to Seville Homes focuses solely on its failure to file tax returns. There is no evidence in the record, however, to show when such returns were due, and the time periods that would have been covered by the returns. In the absence of such evidence, the court is without the ability to determine that the debtor failed to keep or preserve financial records for Seville Homes during or within one year before the filing of the petition in his own case. For that reason, summary judgment will be denied on Count II.

    A separate order will be entered consistent with this opinion.

Date: _____       _____
                                                       Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314
Counsel for the plaintiff

Lawrence J. Anderson, Esquire
Pels, Anderson LLC
4833 Rugby Avenue
4th Floor
Bethesda, MD 20814
Counsel for the defendant

Stephen A Korfonta
1200 N. Nash Street, Apt # 141
Arlington, VA 22209
Debtor